UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **ZACHARY ST. PETER,**<br><br>　　**Plaintiff,**<br><br>　　　　v.<br><br>**GEORGETOWN UNIVERSITY,** *et al.*,<br><br>　　**Defendants.** | Civil Action No. 23-2058 (JEB) |

**MEMORANDUM OPINION**

　　Plaintiff Zachary St. Peter was a student at Georgetown University's School of Medicine until he was dismissed roughly three years ago for his inability to timely complete all coursework. This was only so, says St. Peter, because he was forced to repeat his first-year courses twice after he took two medical leaves of absence. He also alleges that during this same time period, Princy Kumar — the Senior Associate Dean for Students at the medical school — subjected him to unwanted advances and generally maintained an inappropriate faculty-student relationship with him. Believing that Georgetown's and Kumar's actions were unlawful under the Rehabilitation Act and D.C. contract and tort law, Plaintiff brought this suit. Both Defendants now move to dismiss, arguing that all of the claims that Plaintiff puts forth are untimely, inadequately pled, or both. As the Court agrees that most of the counts in the Amended Complaint have been brought too late and similarly concurs that the few that were timely brought are unmeritorious, it will grant the Motion to Dismiss in full.

**I.　　Background**

　　The Court at this stage sets forth the facts as pled in the Complaint, assuming them to be true. See Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). St. Peter,

1

an Arizona resident, enrolled in Georgetown's School of Medicine in August 2016.  See ECF No. 12 (Amended Complaint), ¶¶ 2, 13.  He suffers from "Major Depressive Disorder (MDD)," a "disability" that "at least some persons at Georgetown" were aware he had.  Id., ¶¶ 20–21.  Plaintiff says that this condition "does not interfere with his ability to successfully complete the School of Medicine program," as evidenced by the fact that he satisfactorily completed his first-year coursework in August 2017.  Id., ¶¶ 18, 22.

St. Peter's trouble began when he requested and was granted his first medical leave of absence in December 2017.  Id., ¶¶ 23, 25.  At the time he took this leave, he had "passed all required [first-year] courses and was not at risk of failing any [second-year] classes."  Id., ¶ 26.  He also had little reason to worry, or so he believed, because Georgetown's policy at the time of his enrollment in 2016 allegedly did not require medical students to repeat a course unless obligated by the Committee on Students.  Id., ¶ 19.  As a result, he expected to re-enter Georgetown as a second-year medical student upon his return in Fall 2018.  Id., ¶ 27.

Much to his surprise, Associate Dean Kumar informed Plaintiff in January 2018 that he was wrong and that he would have to repeat his first year of medical school, citing "unspecified changes in the Georgetown curriculum."  Id., ¶ 28.  Besides not explaining why Plaintiff was required to repeat his first-year classes, Kumar also allegedly failed to point St. Peter to "any administrative process to appeal."  Id., ¶ 30.  She further led him to believe that there were no exceptions to this curricular change, which was subsequently belied in August by her decision to credit St. Peter for two of the first-year courses he had already completed.  Id., ¶¶ 31, 36.  To top it all off, Plaintiff's matriculation date of August 2016 was not adjusted, which meant he

had considerably less room for error given a Georgetown policy that requires medical students to graduate within seven years of matriculation. Id., ¶¶ 33, 62.

In spite of this series of unfortunate events, St. Peter remained "excited to enter medical school" after his first leave of absence. Id., ¶ 32. His excitement was not to last, however. Upon his return in Fall 2018, St. Peter was mocked by faculty members for having to repeat his first year of medical school and was also discouraged by his fellow students from participating in lab coursework. Id., ¶¶ 39–40. Worst of all, he was involved in a "pedestrian accident" in March 2019, which forced him to seek a second medical leave of absence to recover from the physical injuries he sustained. Id., ¶¶ 41–43.

Like his first, Plaintiff's second request was granted by the University, and he took his second leave beginning in April 2019. Id., ¶¶ 43–44. Upon his return in August 2019, he was once again required to repeat his first-year coursework, but his matriculation date remained August 2016. Id., ¶¶ 48–50. The tension between this unchanged matriculation date and Georgetown's seven-years-to-graduate rule came to a head in July 2020. In a letter from the Committee on Students, St. Peter was informed that he was being dismissed from the medical program because he would apparently not be able to graduate in time — although this math is not clear to the Court. Id., ¶¶ 61–62. He tried to appeal his dismissal through counsel, but Georgetown allegedly did not respond to his entreaties. Id., ¶¶ 64–65.

These developments alone would be quite a cross to bear, but this was not the end of it, St. Peter says. From 2018 to 2020, as the events recounted above unfolded, Kumar was also engaging in behavior that "gave Plaintiff a great deal of discomfort and anxiety." Id., ¶ 51. She sent him unsolicited personal communications during "non-business hours," invited him to lunches and social events, "repeatedly invited Plaintiff to spend nights at her home on

weekends," and encouraged him to do "late-night research for her in her lab." Id., ¶¶ 51–52, 54, 55. Fearing any reprisal from this authority figure, however — and perhaps expecting Georgetown to independently rein in its employee, see id., ¶¶ 70–71 — St. Peter did not inform anyone at the University of her behavior. Id., ¶ 57.

Instead of bringing this action immediately after his dismissal, St. Peter waited until July 17, 2023, to file his Complaint. See ECF No. 1 (Complaint). Defendants moved to dismiss that initial Complaint, but the Court had no occasion to consider their arguments then because Plaintiff filed an Amended Complaint — the operative pleading here — in response. See ECF Nos. 10 (First Motion to Dismiss) & 12 (Am. Compl.). This Amended Complaint alleges one count of Rehabilitation Act discrimination against Georgetown (Count I); one count of breach of contract under D.C. law, also against Georgetown alone (Count II); and one count of negligence against both the University and Kumar (Count III). Defendants have re-upped their Motion to Dismiss. See ECF No. 14 (Motion to Dismiss).

**II.     Legal Standard**

Rule 12(b)(6) provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted." Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations marks and citation omitted). In weighing a motion to dismiss, a court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the court] may take judicial notice." EEOC v. St. Francis Xavier Parochial School, 117 F.3d 621, 624 (D.C. Cir. 1997). The court "must treat the

complaint's factual allegations as true and must grant [the] plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citations omitted).  It need not accept as true, however, "a legal conclusion couched as a factual allegation" or an inference unsupported by the facts set forth in the complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

**III.    Analysis**

In seeking dismissal, Defendants argue that all of Plaintiff's claims are barred by the applicable statutes of limitations.  They alternatively posit that each cause of action is deficient on the merits.  The Court proceeds count by count.

A.   Count I (Rehabilitation Act)

The Rehabilitation Act, like some other federal statutes,  provides no limitations period. In such a circumstance, courts generally "'borrow' one from an analogous state cause of action, provided that the state limitations period is not inconsistent with underlying federal policies." Alexander v. Wash. Metro. Area Transit Auth., 826 F.3d 544, 551 (D.C. Cir. 2016) (quoting Spiegler v. Dist. of Columbia, 866 F.2d 421, 463–64 (D.C. Cir. 1989)).  The Court must therefore look to state law — here, D.C. law — to find the "most closely analogous" statute from which to borrow a limitations period.  N. Star Steel Co. v. Thomas, 515 U.S. 29, 34 (1995) (citation omitted).

Courts in this district have been less than consistent in applying this analysis to the Rehabilitation Act over the years.  In the past, some adopted the three-year period for personal-injury claims found in what is now D.C. Code § 12-301(a)(8), believing that these were the

5

most analogous.  See, e.g., Doe v. Southeastern Univ., 732 F. Supp. 7, 9 (D.D.C. 1990); Gallion v. D.C. Dep't of Human Servs., 1992 WL 44360, at *1 (D.D.C. Feb. 21, 1992).  "These courts . . . reasoned that because the Supreme Court held in Wilson v. Garcia, 471 U.S. 261 (1985), that state statute[s] of limitations for personal injury actions apply to Section 1983 and Section 1981 actions, then the personal injury limitations period also applies to Rehabilitation Act claims."  Stewart v. Dist. of Columbia, 2006 WL 626921, at *9 (D.D.C. Mar. 12, 2006).  Other courts, however, charted a different path.  See, e.g., Turner v. Dist. of Columbia, 383 F. Supp. 2d 157, 176 (D.D.C. 2005) (applying 300-day limitation period from federal Title VII to Rehabilitation Act claim).

This practice changed dramatically following the D.C. Court of Appeals' decision in Jaiyeola v. Dist. of Columbia, 40 A.3d 356 (D.C. 2012).  The court there held that "a Rehabilitation Act claim is far more similar to [a D.C. Human Rights Act] claim than it is to an ordinary personal injury claim."  Id. at 368.  Both statutes, the court explained, share a purpose of ending discrimination, create a private cause of action to bring about this end, and afford plaintiffs a similar range of compensatory and equitable relief.  Id. at 367.  And while the Rehabilitation Act and the DCHRA are not identical, the D.C. Court of Appeals insisted that their differences "pale in comparison" to the recounted similarities, so the DCHRA "must be deemed the District statute most analogous" to the Rehabilitation Act.  Id. at 366, 368.

Since Jaiyeola, courts in this district have been nearly unanimous in borrowing the one-year limitation period found in the DCHRA.  See D.C. Code § 2-1403.16(a); Abreu v. Howard Univ., 2021 WL 5081543, at *4 (D.D.C. Nov. 2, 2021) (collecting cases); Brickhouse v. Howard Univ., 2021 WL 3007670, at *2 (D.D.C. Feb. 11, 2021) ("Post-Jaiyeola district court authority is . . . virtually uniform.").  Beyond adopting the D.C. Court of Appeals' reasoning as

6

their own, these courts have offered a few additional reasons for this conclusion. For instance, Judge Dabney Friedrich in Arthur v. Dist. of Columbia Housing Auth., 2020 WL 1821111 (D.D.C. Apr. 11, 2020), highlighted the fact that the text and wording of both statutes are "substantially similar." Id. at *6. Judge Christopher Cooper, taking the *via negativa*, noted that the D.C. personal-injury statute is not analogous because it covers too wide a swath of harms, including "conduct that involves no discrimination whatsoever." Congress v. Dist. of Columbia, 324 F. Supp. 3d 164, 172 (D.D.C. 2018).

Undergirding many of these recent decisions is a more foundational principle — namely, that the D.C. Court of Appeals is owed substantial deference on matters of D.C. law, such as the correct characterization of the D.C. causes of action held up in comparison to the Rehabilitation Act. Cf. Williams v. Martinez, 586 F.3d 995, 1001 (D.C. Cir. 2009) ("[O]n questions of District of Columbia law this court defers to the D.C. Court of Appeals."). Courts have thus afforded "considerable persuasive weight" to Jaiyeola's conclusion that "the [DCHRA] is the more analogous cause of action." Abreu, 2021 WL 5081543, at *4 (internal citation omitted); see also Congress, 324 F. Supp. 3d at 173 ("[T]he decision . . . to apply the one-year statute of limitations is . . . consistent with the deference owed to the D.C. Court of Appeals on matters of D.C. law."). All in all, courts here now consistently hold that the DCHRA is a better fit and that its one-year limitations period governs Rehabilitation Act claims.

Plaintiff, for his part, urges this Court to go against the flow. He suggests that the DCHRA is not the most analogous D.C. statute because it is "an all-encompassing act which attempts to package all discrimination into one act." ECF No. 15 (Pl. Opp.) at 3. In his view, the more appropriate analog is the personal-injury statute and its three-year limitations period

— under which his claim would be timely. Id. at 3–4. There is no doubt that the disability-based discrimination prohibited by the Rehabilitation Act is just one subset of the forms of discrimination proscribed by the DCHRA. See Jaiyeola, 40 A.3d at 366 (admitting this). But the Court's task is not to find a perfect match, merely the closest analog. To state the obvious, "[T]he most analogous statute need not be identical." Wolsky v. Med. Coll. of Hampton Rds., 1 F.3d 222, 225 (4th Cir. 1993) (finding Virginia disability-discrimination statute most analogous to Rehabilitation Act). On this score, the DCHRA is undoubtedly a better fit than the D.C. personal-injury statute because the former at least covers the same forms of discrimination as the Rehabilitation Act, compare 29 U.S.C. § 794(a) (prohibiting disability discrimination) with D.C. Code §§ 2-1401.01 & 2-1402.01 (same), while the latter does not require a showing of discrimination at all.

This Court, then, will follow Jaiyeola and its sister courts in concluding that the DCHRA "provides a more analogous cause of action to the Rehabilitation Act than the general personal injury statute." Congress, 324 F. Supp. 3d at 172. It accordingly agrees with Defendants that Count I is governed by a one-year limitations period. See MTD at 4–5 (citing D.C. Code § 2-1403.16(a)). As Plaintiff's Rehabilitation Act cause of action could have accrued no later than his dismissal date of July 17, 2020, see Am. Compl., ¶¶ 61, 85 — viz., three years before he filed this action, see ECF No. 1— he is clearly out of luck. In the absence of an argument that this limitations period was otherwise tolled, the Court will thus dismiss Count I as untimely.

B. D.C. Law Claims

In this scenario, where a complaint is "shorn of its federal claim[]," the Court's job might well be done. See, e.g., Solomon v. Dechert LLP, 2023 WL 6065025, at *17 (D.D.C. Sept. 18, 2023) (declining to exercise pendent jurisdiction over D.C.-law claims after dismissing

all federal claims). As St. Peter adequately pled diversity jurisdiction, however, the Court proceeds to the remaining D.C.-law causes of action.

        1. *Count II (Breach of Contract)*

In seeking dismissal of Plaintiff's contract claim — ostensibly based on some general agreement between Georgetown and its students — Defendants once more begin with the statute of limitations. Yet this time, the dispute does not turn on which statute of limitations applies, since D.C. law specifies a three-year period for breach-of-contract actions. See D.C. Code § 12-301(7). Instead, the parties disagree on whether Count II was in fact brought within three years of the alleged breach.

A breach of contract occurs when a party "fails to perform when performance is due." Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P., 940 A.2d 996, 1004 (D.C. 2008). The limitations period, in turn, begins to run "at the time of the breach." Wright v. Howard Univ., 60 A.3d 749, 751 (D.C. 2013). From the Amended Complaint — which is no model of clarity — the Court discerns five possible breaches. Three of them stem from the fact that Georgetown "forced Plaintiff to repeat his" first year of medical school. See Am. Compl., ¶¶ 95–97. But the latest this could have happened was in August 2019, see id., ¶ 49, almost four years before the Complaint was filed. This count will thus be dismissed to the extent it is based on these events.

Plaintiff next alleges that Georgetown's "false statements and/or false statements by omission" constituted a breach. Id., ¶ 98. It is unclear from the Complaint what these false statements were or when they were (or were not) made. The most plausible reference is to the earlier allegation that Kumar "led Plaintiff to believe that no exceptions could be made" to allow him to re-enter as a second-year student. Id., ¶ 31. This, however, occurred on or around

9

January 4, 2018, again more than three years before the date of filing. Id., ¶¶ 28, 31. So Kumar's alleged lies provide no surer ground for Count II than the previous candidates.

St. Peter last claims that Georgetown breached the contract by "fail[ing] to provide Plaintiff with due process." Id., ¶ 94. What this actually means, again, is anybody's guess. It most likely refers to St. Peter's contention that Kumar "did not make Plaintiff aware of any administrative process to appeal" the school's August 2018 decision to make him repeat his first-year classes. Id., ¶ 30. If that is the case, then Count II was brought about two years too late.

One final possibility, however, is worth considering: the fifth alleged breach could instead be Georgetown's failure to respond when Plaintiff tried to appeal his dismissal back in July 2020. Id., ¶¶ 64–65. This is a generous construction and not one that leaps off the pages of the Complaint, but Plaintiff would be within the three-year limitations period if this is what he meant. His dismissal occurred exactly three years before he filed this suit, so the attempted appeal of said dismissal must have occurred less than three years ago. See id., ¶¶ 61, 65. This reading, it would seem, would save St. Peter's contract claim.

Even if this is what he really meant, though, it ultimately gets him nowhere. While there is no doubt that "there is a contractual relationship between a university and its students," Bain v. Howard Univ., 968 F. Supp. 2d 294, 299 (D.D.C. 2013), St. Peter still has to "allege sufficient facts to demonstrate . . . the terms of the contract" to survive a motion to dismiss. Mosby-Nickens v. Howard Univ., 864 F. Supp. 2d 93, 98 (D.D.C. 2012) (quoting Manago v. Dist. of Columbia, 934 A.2d 925, 927 (D.C. 2007). As Defendants point out, he has not done so. See MTD at 11. St. Peter could have pointed to an explicit contractual term, or he could at least have pointed to school policies or Student Handbook provisions. See, e.g., Doe v.

10

American Univ., 2020 WL 5593909, at *11 (D.D.C. Sept. 18, 2020) (holding that student code of conduct was part of contract between student and university). But Plaintiff has done none of this, so there is no way of knowing what process Georgetown owed him or whether it satisfied its amorphous obligation when it met with him prior to his dismissal. See Am. Compl., ¶ 60. Even such a charitable reading, therefore, does not change the Court's conclusion that this count must be dismissed.

      2. *Count III (Negligence)*

Last up is Plaintiff's negligence cause of action. Defendants complete the statute-of-limitations trifecta, contending that Count III is just as untimely as Counts I and II. See MTD at 11–13. As it does for contract actions, D.C. law specifies a limitations period of three years for negligence claims. See D.C. Code § 12-301(8). "In negligence, a cause of action accrues when the injury results." Commonwealth Land Title Ins. Co. v. KCI Techs., Inc., 922 F.3d 459, 464 (D.C. Cir. 2019) (cleaned up). Defendants argue that all, or at least most, of the injuries listed in the Amended Complaint occurred more than three years before St. Peter initiated this suit. See MTD at 12–13. They further maintain that any claim that was timely brought is otherwise inadequately pled and should be dismissed as well. Id. at 13–15. As the Complaint lists a handful of possible injuries giving rise to Plaintiff's negligence count, the Court will consider each in turn.

Start with the allegations specific to Kumar. She allegedly acted caused him injury by not providing St. Peter "adequate information regarding loss of course credit," failing to provide an appeal process following his return from his first leave of absence, offering "improper and unethical coaching," and generally maintaining an inappropriate relationship with him. See Am. Compl., ¶ 103. The perceptive reader will have noticed that all of these events predate St.

Peter's dismissal. For example, the alleged failures to provide information and an appeal process occurred in January 2018. Id., ¶¶ 28, 30–31. The improper coaching, meanwhile, was provided somewhere around June 2019. Id., ¶¶ 46–47. As Plaintiff's negligence claim against Kumar thus accrued more than three years ago, it must be dismissed as untimely.

Turning to the allegations regarding Georgetown, the Complaint names three possible omissions that caused injury: 1) the University's failure to "ensure that Plaintiff's contractual educational services were being provided" by the terms of the contract, 2) its failure to assist him after learning of Kumar's alleged negligence, and 3) its failure to "follow policy and procedure in dismiss[ing]" St. Peter. Id., ¶¶ 101–02. The second of the three is untimely because it is dependent on the injuries Kumar caused, harms that occurred too long ago.

The timeliness of the first and third is harder to assess in the absence of specific dates on which the Complaint alleged that these injuries occurred. Assuming *arguendo* that they took place within the limitations period, they nonetheless succumb for an independent reason — *viz.*, they are merely reformulations of Plaintiff's already-dismissed Count II. See Choharis v. State Farm Fire & Cas. Co., 961 A.2d 1080, 1089 (D.C. 2008) (to bring tort claim related to contract dispute, it "must exist in its own right independent of the contract."). Indeed, the first of these explicitly speaks of "the terms of the contract," Am. Compl., ¶ 102, while the third repeats Plaintiff's breach theory based on Georgetown's failure to furnish due process before dismissing him. Id., ¶¶ 94, 101. In other words, Count III "do[es] not exist independently of that contractual relationship." Amin v. Nyack Sch. of Adult & Distance Educ., 710 F. Supp. 2d 80, 83 (D.D.C. 2010); cf. Mines v. Metagenics, Inc., 2023 WL 6795879, at * 6 (D.D.C. Oct. 13, 2023) (finding viable fraudulent-inducement tort claim that relied on contractual breach but

added allegation that promisor never intended to perform). Since D.C. law does not allow for this kind of double dipping, the Court will dismiss Count III in whole.

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendants' Motions to Dismiss. A separate Order to that effect will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: December 15, 2023